## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

FRIENDS OF HURRICANE )
CREEK; JOHN WATHEN, )
  )
    Plaintiffs, )
  )
    vs. )     CV 08-B-0875-W
  )
BUILDERS GROUP )
DEVELOPMENT, LLC, )
  )
    Defendant. )

## MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, or in the alternative, Motion to Stay.  (Doc. 6.)[1]  Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, (doc. 6), is due to be denied; its Motion to Stay, (doc. 6), is due to be granted.

### I.  MOTION TO DISMISS STANDARD – FED. R. CIV. 12(b)(1)

Under Fed. R. Civ. P. 12(b)(1), a party may ask the court to dismiss the case if it lacks jurisdiction over the subject matter of the case.  Plaintiffs, as the parties invoking

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

jurisdiction, bear the burden of establishing the court's subject matter jurisdiction. *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir.1994).

Attacks on subject matter jurisdiction under Rule 12(b)(1) occur in two forms: facial attacks and factual attacks. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990); *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731 (11th Cir. 1982). "'Facial attacks' on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true." *McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999)(quoting *Lawrence*, 919 F.2d at 1528-29). Therefore, "when faced with a 12(b)(1) challenge to the face of a complaint, the plaintiff can survive the motion by showing any arguable basis in law for the claim made." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). "Factual attacks, on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *Cook Oil Co., Inc. v. United States*, 919 F. Supp. 1556, 1559 (M.D. Ala. 1996)(quoting *Lawrence*, 919 F.2d at 1529). Therefore, "The district court has the power to dismiss for lack of subject matter jurisdiction on any of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *McElmurray v. Consol. Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007)(internal quotations and citations omitted)

2

Defendants' challenge to the court's subject-matter jurisdiction in a factual challenge.

## II. <u>STATEMENT OF FACTS</u>

On October 4, 2006, defendant submitted a Notice of Registration to Alabama Department of Environmental Management ["ADEM"] to request a National Pollutant Discharge Elimination System ("NPDES") permit for defendant's construction site in Tuscaloosa County, Alabama.  (Doc. 1 ¶ 9.)  Under Alabama law, defendant was required "to fully implement Best Management Practices to the maximum extent practicable to provide effective treatment of discharges of pollutants in stormwater resulting from runoff at the . . . construction site and to prevent offsite sedimentation and deposition of construction site waste."  (*Id*. ¶ 17.)

ADEM conducted an inspection of the construction site on December 18, 2007. (Doc. 6, Ex. 1 ¶ 3; *see also* doc. 11, Ex. A.)  Thereafter, on December 26, 2007, ADEM sent defendant a Warning Letter, which stated that defendant had violated certain portions of its NPDES permit.  (Doc. 6, Ex 1 ¶ 4 and ex. A.)  ADEM gave defendant seven days to file a "full report" that "detail[ed] its immediate and long-term corrective actions that [it had] taken and [would] be tak[ing] to adequately correct [the] noted deficienc[ies]."  (Doc. 6, Ex. 1, ex. A.)  It asked defendant "to submit . . . certification from a [ADEM-recognized qualified credentialed professional] that all deficiencies at the [construction site] had been corrected." (Doc. 20, Ex. 1 at 1, 3.)  This certification was not submitted to ADEM.  (*Id*. at 3.)  The

Warning Letter also stated that ADEM retained "the option to take further enforcement action" against defendant in regards to the deficiencies.  (Doc. 6, Ex. 1, ex. A.)

ADEM again inspected the construction site in February 2008.  (Doc. 6, Ex. 1 ¶ 5; doc. 11, Exs. C, D.)  It found that defendant "had not properly implemented and maintained effective [best management practices] resulting in discharges of sediment in stormwater runoff to an [unnamed tributary] to Cottondale Creek."  (Doc. 20, Ex. 1 at 2.)

On March 5, 2008, plaintiffs sent defendant an "intent to sue" letter.  (Doc. 1 ¶ 12; doc. 11, Ex. E.)  Later that month, on March 24, 2008, ADEM sent defendant a letter notifying it of violations of the Alabama Water Pollution Control Act ("AWPCA"), Ala. Code §§ 22-22-1 to 22-22-14.  (Doc. 6, Ex. 1, ex. B.)  In this letter, ADEM informed defendant that it believed further enforcement action, including a civil penalty, was necessary.  (*Id.*)  Also, it included a proposed Administrative Consent Order.  (*Id.*)

Defendant agreed to the terms of the proposed Administrative Consent Order.  (Doc. 6, Ex. 1, ex. C.)  On May 13, 2008, ADEM posted the proposed Administrative Consent Order for public comment for a period of thirty days.  (Doc. 6, Ex. 1 ¶ 8; doc. 11, Exs. G and H.)

On May 16, 2008, plaintiffs filed the instant action against defendant.  They allege:

18.  On December 20, 2007, December 23, 2007, December 28, 2007, December 30, 2007, January 7, 2008, January 9, 2008, January 13, 2008, January 17, 2008, January 22, 2008, January 25, 2008, January 31, 2008, February 2, 2008, February 7, 2008, February 13, 2008, February 17, 2008, February 18, 2008, and February 21, 2008[,] Defendant failed to fully implement Best Management Practices to the maximum extent practicable at

4

the . . . construction site in violation of Ala. Admin. Code R. 335-6-12-.05(2), 335-6-12-.21(1), 335-6-12-.21(4), and 335-6-12-.21(5) and the conditions of NPDES Permit No. ALR16B471.

. . .

22.   On December 23, 2007, December 28, 2007, December 30, 2007, January 7, 2008, January 9, 2008, January 17, 2008, January 22, 2008, January 25, 2008, January 30, 2008, February 1, 2008, February 2, 2008, February 6, 2008, February 7, 2008, February 13, 2008, February 17, 2008, February 18, 2008, and February 21, 2008, Defendant failed to maintain Best Management Practices to the maximum extent practicable at the . . . construction site in violation of Ala. Admin. Code R. 335-6-12-.05(2), 335-6-12-.21(4), 335-6-12-.21(5), and 335-6-12-.35(1) and the conditions of NPDES Permit No. ALR16B471.

. . .

26.   On December 28, 2007, December 30, 2007, January 9, 2008, January 10, 2008, January 1, 2008, February 1, 2008, February 13, 2008, February 17, 2008, and February 21, 2008, Defendant discharged pollutants from the . . . construction site not effectively treated to the maximum extent practicable by Best Management Practices implemented and maintained pursuant to Ala. Admin. Code Chap. 335-6-12 in violation of Ala. Admin. Code R. 335-6-12-.33(1) and the conditions of NPDES Permit No. ALR16B471.

. . .

30.   On February 21, 2008, Defendant used Best Management Practices at the . . . construction site that caused or contributed to a violation of the turbidity standard in Ala. Admin. Code R. 335-6-10-.09(5)(e)9. in violation of Ala. Admin. Code R. 335-6-12-.21(5)(d) and the conditions of NPDES Permit No. ALR16B471.

(Doc. 1 ¶¶ 18, 22, 26, 30.)

The proposed Consent Order was entered on July 28, 2008.  (Doc. 20, Ex. 1.)

III.  **DISCUSSION**

Defendant contends that this court lacks subject-matter jurisdiction over plaintiffs'

citizen suit because (1) ADEM had "commenced" an enforcement action before plaintiffs

sent their Notice, and (2) the water source at issue is not a navigable water.  It also contends

that the Consent Order "precludes" plaintiffs' citizen's suit.

**A.  SECTION 1319(g)(6) – CITIZEN SUIT**

"The Clean Water Act [CWA] was originally enacted in 1948 for the control of water

pollution, and its enforcement authority was given primarily to the states."  *Black Warrior*

*Riverkeeper, Inc. v. Cherokee Mining, LLC*, 548 F.3d 986, 987 (11th Cir. 2008).  "Since that

time Congress has amended the Clean Water Act on several occasions so that the

enforcement authority for keeping our Nation's waterways clean is shared by the fifty states,

the federal government through the Administrator of the Environmental Protection Agency

. . ., and private U.S. citizens."  *Id*. at 987-88 (footnote omitted).

> Congress has placed certain limitations on the use of citizen suits, completely
> barring them in some circumstances.  For example, under the original 1972
> amendments, a private individual cannot bring a private suit if a state or the
> Administrator of the Environmental Protection Agency is diligently
> prosecuting an action against an alleged polluter in state or federal court.  [See
> 33 U.S.C. § 1365(b)(1)(B).]  The CWA's 1987 amendments extended the bar
> on citizen suits, instructing that an administrative penalty action is enough to
> preclude a citizen suit, provided that the state is "diligently prosecuting" the
> penalty action under a "State law comparable to [subsection 309(g)]."  [*See id*.
> § 1319(g)(6)(A)(ii).]

*McAbee v. City of Fort Payne*, 318 F.3d 1248, 1249 (11th Cir. 2003)(footnotes omitted).

Section 1319(g)(6)(A) and (B) set forth the  availability and limitations on citizen's suits under the CWA:

(g)  Administrative penalties

. . .

     (6)  Effect of order

          (A)  Limitation on actions under other sections

          Action taken by the Administrator or the Secretary, as the case may be, under this subsection shall not affect or limit the Administrator's or Secretary's authority to enforce any provision of this chapter; except that any violation –

               . . .

               (ii)  with respect to which a State has ***commenced*** and is ***diligently prosecuting*** an action under a State law comparable to this subsection,

               . . .

          shall not be the subject of a civil penalty action under subsection (d) of this section or section 1321(b) of this title or section 1365 of this title.

          (B)  Applicability of limitation with respect to citizen suits

          The limitations contained in subparagraph (A) on civil penalty actions under section 1365 of this title shall not apply with respect to any violation for which –

               (i)  a civil action under section 1365(a)(1) of this title has been filed prior to commencement of an action under this subsection, or

(ii)  notice of an alleged violation of section 1365(a)(1) of this title has been given in accordance with section 1365(b)(1)(A) of this title prior to commencement of an action under this subsection and an action under section 1365(a)(1) of this title with respect to such alleged violation is filed before the 120th day after the date on which such notice is given.

33 U.S.C.A. § 1319(g)(6)(A) and (B)(emphasis added).

## B.  NAVIGABLE WATERS

Defendant contends:

Congress stated in the Clean Water Act that the objective of the Act is "to restore and maintain the chemical, physical, and biological integrity of the nation's waters." 33 U.S.C. § 1251(a).  The Clean Water Act further makes "the discharge of any pollutant by any person" unlawful. 33 U.S.C. § 1311(a).  According to the definitions listed for Chapter 26 of the Clean Water Act, "[t]he term 'discharge of a pollutant' and the term 'discharge of pollutants' each means any addition of any pollutant to ***navigable waters***." 33 U.S.C. § 1362(12)(A) (emphasis added).  This same chapter of the Clean Water Act defines "navigable waters" as "mean[ing] the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7).  Therefore, in order for a "water" to come under the jurisdiction of the Clean Water Act, and thus this United States District Court, that "water" must be a navigable water.

The Plaintiffs have alleged federal jurisdiction based primarily upon 33 U.S.C. § 1365(a), as it is from the authority granted to the federal courts by this statute that any federal question and/or civil penalties jurisdiction would arise.  Section 1365(a) of Title 33 of the United States Code states that a "citizen may commence a civil action on his own behalf against any person . . . who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation."  It is important to note that this section specifically refers to "effluent standard[s] or limitation[s] under this chapter."  33 U.S.C. § 1365(a).  The reference to "under this chapter" is important because such language necessarily refers back to the term "navigable water" as it is defined in 33 U.S.C. § 1362(7), in order to allow such suits to be brought in federal court.  Therefore, in order to determine whether or not

8

a federal court has jurisdiction to hear a case involving a violation of a "standard or limitation," it is necessary to first determine whether such violation involved a ***navigable water***.  33 U.S.C. § 1365(a).

(Doc. 20 at 13-15 [emphasis in original].)

Plaintiffs' Complaint alleges that defendant violated its NPDES permit, in violation of the Clean Water Act, by allowing pollutants to run-off the construction site and "into an unnamed tributary of Cottondale Creek, itself a tributary of Hurricane Creek . . . ."  (Doc. 1, ¶¶ 1, 16, 18, 22, 26.)  Defendant, based on expert testimony, contends that "there is no reliable scientific basis to support a claim that water and/or sediment from the [defendant's construction site] significantly affected the physical, chemical, and biological integrity of Hurricane Creek or the Black Warrior River;" therefore, the unnamed tributary is not a navigable water.   (Doc. 20 at 21 [quoting doc. 20, Ex. 2  ¶ 21].)  "Because the unnamed tributary referenced in the Complaint is not a navigable water, this water is not covered by the Clean Water Act, and is not subject to federal jurisdiction by means of the Clean Water Act or federal question jurisdiction.  Therefore, the Plaintiffs' Complaint is due to be dismissed due to lack of jurisdiction."  (*Id*.)  Plaintiffs, in opposition, have presented evidence that the unnamed tributary has a significant nexus to the navigable waters of Hurricane Creek and the Black Warrior River for purposes of the Clean Water Act.  (Doc. 25 at 12-27 [citing, *inter alia*, doc. 24, Exs. B-F].)

Whether the waters at issue in this case are navigable or have a significant nexus to navigable waters is a jurisdictional issue and an element of plaintiffs' federal cause of action.

9

In such cases, the Eleventh Circuit has cautioned against analyzing the issue pursuant to Rule

12(b)(1) –

> If we should find that [the ground for dismissing the case for lack of
> jurisdiction] is an element of [the federal cause of action], then well
> established precedent requires the district court, in ruling on a motion to
> dismiss, "to find that jurisdiction exists and deal with the objection as a direct
> attack on the merits of the plaintiff's case." *Simanonok v. Simanonok*, 787
> F.2d 1517, 1520 (11th Cir. 1986)(quoting *Williamson v. Tucker*, 645 F.2d 404,
> 415 (5th Cir. 1981), *cert. denied*, 454 U.S. 897, 102 S. Ct. 396, 70 L. Ed. 2d
> 212 (1981)).  The appropriate standard of review would then be the one
> applicable to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 56 motions, "both of
> which place greater restrictions on the district court's discretion." *Williamson*,
> 645 F.2d at 415.
>
>        . . . In accordance with this holding, the proper procedure for a district
> court is to assume jurisdiction and utilize the standards associated with a
> 12(b)(6) motion or Rule 56 motion for summary judgment.

*Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A*., 104 F.3d 1256, 1258 (11th Cir.

1997).  In this case, defendant has presented evidence outside the pleadings; therefore, the

court will apply the summary-judgment standards to this issue.[2]  *See* Fed. R. Civ. P. 12(d).

        This circuit has adopted Justice Kennedy's concurring opinion in *Rapanos v. United*

*States*, 547 U.S. 715 (2006), for the definition of navigable waters under the Clean  Water

---

        [2]Summary judgment is appropriate when the record shows "that there is no genuine issue
as to any material fact and that the moving party is entitled to a judgment as a matter of law."
Fed. R. Civ. P. 56(c).  In deciding a motion for summary judgment, the court's function is
not to "weigh the evidence and determine the truth of the matter but to determine whether
there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
Credibility determinations, the weighing of evidence, and the drawing of inferences from the
facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be
believed and all justifiable inferences are to be drawn in its favor.  *See id.* at 255.

Act.  *See United States v. Robison*, 505 F.3d 1208, 1221 (11th Cir. 2007).  According to

Justice Kennedy, "to constitute 'navigable waters' under the Act, a water or wetland must

possess a 'significant nexus' to waters that are or were navigable in fact or that could

reasonably be so made."  *Rapanos*, 547 U.S. at 759 (Kennedy, J., concurring)(citing *Solid*

*Waste Agency of Northern Cook Cty. v. Army Corps of Engineers*, 531 U.S. 159, 167

(2001)(internal quotations omitted).  Regarding wetlands, Justice Kennedy wrote:

> Consistent with [prior Supreme Court opinions] and with the need to give the term "navigable" some meaning, the Corps' jurisdiction over wetlands depends upon ***the existence of a significant nexus between the wetlands in question and navigable waters in the traditional sense***.  The required nexus must be assessed in terms of the statute's goals and purposes.  Congress enacted the law to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters," 33 U.S.C. § 1251(a), and it pursued that objective by restricting dumping and filling in "navigable waters," §§ 1311(a), 1362(12).  With respect to wetlands, the rationale for Clean Water Act regulation is, as the Corps has recognized, that wetlands can perform critical functions related to the integrity of other waters – functions such as pollutant trapping, flood control, and runoff storage.  33 C.F.R. § 320.4(b)(2).  Accordingly, wetlands possess the requisite nexus, and thus come within the statutory phrase "navigable waters," if the wetlands, either alone or in combination with similarly situated lands in the region, ***significantly affect the chemical, physical, and biological integrity of other covered waters more readily understood as "navigable."***  When, in contrast, wetlands' effects on water quality are speculative or insubstantial, they fall outside the zone fairly encompassed by the statutory term "navigable waters."

*Id*. at 779-80 (Kennedy, J. concurring)(emphasis added).  Therefore, pursuant to Justice

Kennedy's concurring opinion in *Rapanos*, a non-navigable water has a significant nexus to

a navigable water if it significantly affects the chemical, physical, and biological integrity of that navigable water.[3]

Viewing the evidence in the light most favorable to plaintiffs, the court finds that a disputed issue of fact exists as to whether the unnamed tributary of Cottondale Creek has a significant nexus to navigable waters. Therefore, defendant's Motion to Dismiss plaintiffs' Complaint on this ground is due to be denied.

## C. "COMMENCED"

Defendant contends that ADEM "commenced" an action against it "when ADEM sent Defendant a letter via certified mail informing Defendant that it was in violation of Alabama's regulatory requirements" in December 2007. (Doc. 6, Ex. 1 ¶ 4.) Therefore, defendant contends that plaintiffs' citizen suit is barred because plaintiffs did not send their Notice of Intent to Sue until March 2008.

The Eleventh Circuit has not defined "commencement" and "diligent prosecution." *McAbee*, 318 F.3d at 1251 n.6. However, in a similar case, another Judge on this court has held:

> The CWA also contains a provision that bars citizen suits in certain situations. It states, "any violation . . . with respect to which a State has commenced and is diligently prosecuting an action under a State law comparable to [the CWA] . . . shall not be the subject of a civil penalty action" in the form of a citizen suit. 33 U.S.C. § 1319(g)(6)(A)(ii). Thus, if a state has

_____

[3]The plurality opinion would include the unnamed tributary of Cottondale Creek a navigable water under the CWA because it is "a relatively permanent, standing or flowing [body] of water." *Rapanos*, 547 U.S. at 732 (plurality).

already begun prosecuting violations such as this, a plaintiff may not use the CWA to duplicate that effort through a citizen suit.  However, the CWA goes on to specifically lift this bar on citizen suits if the suit was filed before state or federal agencies commenced action or if the citizen gave the required 60-day notice of its intent to sue before an agency commenced an action and the citizen followed up and filed suit in federal court by the 120th day after the notice was given.

To decide whether this court has subject matter jurisdiction over [plaintiff's] suit, it must first determine if the jurisdictional bar in § 1319(g)(6) applies.  A citizen suit will be barred if a state has commenced and is diligently prosecuting an administrative enforcement action before the citizen suit is filed.  Here, ADEM notified [defendant] on September 29, 2006 and on April 13, 2007 of effluent violations.  ADEM also issued a warning letter to [defendant] on March 12, 2007.  On July 20, 2007, ADEM sent another letter to [defendant], formally notifying [defendant] of its violation, proposing an informal conference, and including a proposed consent order as a solution.  [Defendant] executed the consent order on August 3, 2007, and ADEM finalized it on September 24, 2007 after a requisite notice and comment period.  The key question here is which, if any, of ADEM's actions constitutes "commencement" of an administrative enforcement proceeding under the CWA.  The Eleventh Circuit has noted that neither it nor the CWA has defined what actions constitute "commencement" in this context but that most courts conclude that the issuance of an administrative consent order satisfies this requirement.  *See McAbee v. City of Fort Payne*, 318 F.3d 1248, 1251 n.6 (11th Cir. 2003).  In a case cited by the Eleventh Circuit in *McAbee*, the Eighth Circuit, in determining whether a state agency had "commenced" an enforcement action, held that "states are afforded some latitude in selecting the specific mechanisms of their enforcement program."  *Ark. Wildlife Fed'n v. ICI Ams., Inc.*, 29 F.3d 376, 380 (8th Cir. 1994).  Under Alabama law, an ADEM action is "commenced" in this manner:

> The department shall commence enforcement action under this paragraph by notifying the person subject thereto in writing of the alleged violation and affording the person an opportunity for an informal conference . . . concerning the alleged violation and any proposed order.

*Ala. Code* § 22-22A-5(18a)(1975).  Therefore, under Alabama's mechanism for administrative enforcement actions, ADEM commenced the action in this case via letter on July 20, 2007.[4]

*Black Warrior Riverkeeper, Inc. v. Cherokee Mining, L.L.C.*, CV 07-AR-1392-S, doc. 13 at

3-5 (N.D. Ala. Dec. 19, 2007)(Acker, J.)(footnote added), *interlocutory appeal* 548 F.3d 986

(11th Cir. 2008).  Section 22-22A-5(18)(a) states:

> The department shall commence enforcement action under this paragraph by [1] ***notifying the person subject thereto in writing of the alleged violation*** and [2] ***affording the person an opportunity for an informal conference*** with the director or his or her designated representative concerning the alleged violation and any proposed order.  The informal conference shall not be subject to the procedures for hearings under Section 22-22A-7.  ***Before issuing any consent or unilateral order*** under this section, ***the department shall cause public notice*** to be published for one day in a newspaper of general circulation in the area where the alleged violation occurred and on the website of the department for the duration of the comment period . . . .  The notice shall reasonably describe the nature and location of the alleged violation and the amount of civil penalty proposed, contain a summary of any proposed corrective measures, provide instructions for obtaining a copy of the proposed order, and indicate that persons may submit written comments to the department and request a hearing on the proposed order within 30 days of the first date of publication. . . .  After consideration of written comments, any information submitted at the hearing, if one was held, and any other publicly available information, the department may issue the order as proposed, issue a modified order, or withdraw the proposed order.  Any order issued under this paragraph shall include findings of fact relied upon by the department in determining the alleged violation and the amount of the civil penalty and shall be served on persons subject to the order in the manner provided for service of process in the Alabama Rules of Civil Procedure.  Upon issuance of an order, the

---

[4]Defendant did not challenge this finding on appeal.  *See Black Warrior Riverkeeper*, 548 F.3d at 989 n.3.

department shall also provide written notice of the order by regular mail to each person who submitted written comments on the proposed order that contain a current return address.  The notice shall reasonably describe the nature and location of the alleged violation and the amount of civil penalty, contain a summary of any required corrective measures, provide instructions for obtaining a copy of the order, and indicate that persons who submitted written comments on the proposed order may, within 30 days of the issuance of the order, request a hearing on the order before the Environmental Management Commission in accordance with Section 22-22A-7. . . .

Ala. Code 22-22A-5(18)(a).

Applying Ala. Code § 22-22A-5(18)a to the facts of this case, ADEM commenced its action against defendant on March 24, 2008, when it notified defendant in writing of alleged violations and afforded it an opportunity for an informal conference concerning the alleged violations.  (*See* doc. 6, Ex. 1  ¶ 6 and ex. B.)  Plaintiffs sent their Notice of Intent to Sue on March 5, 2008.  (*See* doc. 11, Ex. E.)  Therefore, pursuant to § 1319(g)(6)(B)(ii), the limitations on citizen's suits found in § 1319(g)(6)(A) does not bar plaintiffs' Complaint. *See Black Warrior Riverkeeper*,  548 F.3d at 991-92.

Defendant's Motion to Dismiss based on § 1319(g)(6)(A) is due to be denied.

## D.  CONSENT ORDER and STAY OF THE PROCEEDINGS

Defendant contends that plaintiffs' Complaint is precluded by the Administrative Consent Order.  (Doc. 20 at 9-12.)  It argues:

> In the same manner, the Plaintiffs in the case at bar have alleged that [defendant] violated the ADEM-issued NPDES permit for [the construction site] between the dates of December 20, 2007 and February 21, 2008. [(Doc. 1 ¶¶ 18, 22, 26, 30.)]  The Consent Order entered into between ADEM and [defendant] specifically referenced violations by [defendant] at the [construction site] from October 3, 2007 through February 22, 2008.  [(Doc.

15

20, Ex. 1.)]  However, . . . the ADEM Consent Order in this case not only penalized [defendant] for the violations alleged in the Consent Order, but also required [defendant] to take immediate and temporary corrective measures, ***thus indicating that ADEM clearly contemplated "ongoing violations" up to the effective date of the Consent Order***.  [(*Id*. at 8.)]  Therefore, since the permit violations alleged by the Plaintiffs in this case are covered within the Consent Order issued by ADEM to [defendant], the Plaintiffs' suit for civil penalties with respect to those violations is precluded.

(Doc. 20 at 11-12 [emphasis in original].)  Plaintiffs did not address this issue in their April 2009, Response.  (*See generally* doc. 25.)  However, in their July 2008, Response, they contend, "The violations alleged in Plaintiffs' complaint are not the subject of the . . . proposed Consent Order.  Contested Facts relevant in this lawsuit will not be adjudicated by ADEM.  Any relief provided (including [a] penalty) in the final . . . Consent Order will be negotiated and consensual and not binding on the Court or Plaintiffs.  Thus, there is virtually no possibility that the agency decision would end the dispute."  (Doc. 10 at 38.)

As part of the Consent Order, defendant stipulated that "[s]ediment and other pollutants in stormwater runoff from [its construction site] have discharged to an unnamed tributary to Cottondale Creek, a water of the State, classified for Fish & Wildlife," and that ADEM, as a result of its inspections of the construction site, found that defendant "had not properly implemented and maintained effective [best management practices] resulting in discharges of sediment in stormwater runoff to an [unnamed tributary] of Cottondale Creek."  (Doc. 20, Ex. 1 at 1, 2.)  As a result of the Consent Order, defendant agreed to pay a civil penalty of $15,000, and to take a number of steps "to ensure immediate and future compliance with the [Alabama Water Pollution Control Act], applicable ADEM regulations,

16

and all NPDES registration limitations, terms and conditions for all ADEM NPDES regulated sites/facilities disturbed, operated, owned, and/or controlled by [defendant]," and to "correct all alleged deficiencies at the [construction site], offsite conveyances, and affected State waters, including sediment removal/remediation in  a manner acceptable to [ADEM]." (*Id.* at 8, 9; *see generally id.* at 7-11.)

At oral argument, plaintiffs conceded that this case would be moot if defendant complies with the Consent Order and completes its agreed-to remediation of the affected waters.  Plaintiff also agreed that a stay of this case for a definite time would be appropriate.

Therefore, by separate Order, this court will grant defendant's Motion to Stay and stay this case for four months to allow defendant to comply with the terms of the Consent Order.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that defendant's Motion to Dismiss, (doc. 6), is due to be denied and its Motion to Stay, (doc. 6), will be granted.   An Order denying defendant's Motion to Dismiss, granting its Motion to Stay, and staying this matter for four months will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this the 20th day of July, 2009.

*Sharon Lovelace Blackburn*
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE