

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **FRIENDS OF HURRICANE CREEK;** | **)** | |
| **JOHN WATHEN,** | **)** | |
| | **)** | |
| **Plaintiffs,** | **)** | |
| | **)** | |
| **vs.** | **)** | **Case Number:  7:08-CV-0875-SLB** |
| | **)** | |
| **BUILDERS GROUP DEVELOPMENT,** | **)** | |
| **L.L.C.,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |

## <u>MEMORANDUM OPINION</u>

This case is presently pending before the court on defendant's Motion to Extend Stay of Proceedings, (doc. 30),[1] and its Amended Motion to Dismiss,[2] (doc. 40).  Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion to Extend Stay of Proceedings is due to be denied as moot, and its Amended Motion to Dismiss, (doc. 40), is due to be denied in part and granted in part.

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

[2] Defendant refers to its Motion to Dismiss as an "Amended" Motion.  However, as there is no pending Motion to Dismiss to amend, the court considers this merely a second Motion to Dismiss.

## I. <u>MOTION TO DISMISS STANDARD</u>

Defendant asks this court to dismiss plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(1).  Under Fed. R. Civ. P. 12(b)(1), a party may move the court to dismiss a case if the court lacks jurisdiction over the subject matter of the case.  Plaintiffs, as the parties invoking jurisdiction, bear the burden of establishing the court's subject matter jurisdiction.  *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir.1994).

Attacks on subject matter jurisdiction under Rule 12(b)(1) occur in two forms: facial attacks and factual attacks.  *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990); *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731 (11th Cir. 1982).  "'Facial attacks' on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true." *McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999)(quoting *Lawrence*, 919 F.2d at 1528-29).  Therefore, "when faced with a 12(b)(1) challenge to the face of a complaint, the plaintiff can survive the motion by showing any arguable basis in law for the claim made." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996).  "Factual attacks, on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *Cook Oil Co., Inc. v. United States*, 919 F. Supp. 1556, 1559 (M.D. Ala. 1996)(quoting *Lawrence*, 919 F.2d at 1529).

2

Defendant's challenge to the court's subject-matter jurisdiction in a factual challenge. It contends that this court lacks subject-matter jurisdiction because plaintiffs' claims "have been addressed and remedied by the Consent Order executed on July 28, 2008, between the Alabama Department of Environmental Management ("ADEM") and [defendant], and thus this case is now moot."  (Doc. 40 at 2.)

## II.  **STATEMENT OF FACTS**

In its prior Order, the court set forth the following facts:

> On October 4, 2006, defendant submitted a Notice of Registration to Alabama Department of Environmental Management ["ADEM"] to request a National Pollutant Discharge Elimination System ["NPDES"] permit for defendant's construction site in Tuscaloosa County, Alabama.  (Doc. 1 ¶ 9.) Under Alabama law, defendant was required "to fully implement Best Management Practices to the maximum extent practicable to provide effective treatment of discharges of pollutants in stormwater resulting from runoff at the . . . construction site and to prevent offsite sedimentation and deposition of construction site waste."  (*Id.* ¶ 17.)

> ADEM conducted an inspection of the construction site on December 18, 2007.  (Doc. 6, Ex. 1 ¶ 3; see also doc. 11, Ex. A.)  Thereafter, on December 26, 2007, ADEM sent defendant a Warning Letter, which stated that defendant had violated certain portions of its NPDES permit.  (Doc. 6, Ex 1 ¶ 4 and ex. A.)  ADEM gave defendant seven days to file a "full report" that "detail[ed] its immediate and long-term corrective actions that [it had] taken and [would] be tak[ing] to adequately correct [the] noted deficienc[ies]." (Doc. 6, Ex. 1, ex. A.)  It asked defendant "to submit . . . certification from a [ADEM-recognized qualified credentialed professional] that all deficiencies at the [construction site] had been corrected."  (Doc. 20, Ex. 1 at 1, 3.)  This certification was not submitted to ADEM.  (*Id.* at 3.)  The Warning Letter also stated that ADEM retained "the option to take further enforcement action" against defendant in regards to the deficiencies.  (Doc. 6, Ex. 1, ex. A.)

> ADEM again inspected the construction site in February 2008.  (Doc. 6, Ex. 1 ¶ 5; doc. 11, Exs. C, D.)  It found that defendant "had not properly

implemented and maintained effective [best management practices] resulting in discharges of sediment in stormwater runoff to an [unnamed tributary] to Cottondale Creek." (Doc. 20, Ex. 1 at 2.)

On March 5, 2008, plaintiffs sent defendant an "intent to sue" letter. (Doc. 1 ¶ 12; doc. 11, Ex. E.)  Later that month, on March 24, 2008, ADEM sent defendant a letter notifying it of violations of the Alabama Water Pollution Control Act ("AWPCA"), Ala. Code §§ 22-22-1 to 22-22-14. (Doc. 6, Ex. 1, ex. B.)  In this letter, ADEM informed defendant that it believed further enforcement action, including a civil penalty, was necessary. (*Id.*)  Also, it included a proposed Administrative Consent Order. (*Id.*)

Defendant agreed to the terms of the proposed Administrative Consent Order. (Doc. 6, Ex. 1, ex. C.)  On May 13, 2008, ADEM posted the proposed Administrative Consent Order for public comment for a period of thirty days. (Doc. 6, Ex. 1 ¶ 8; doc. 11, Exs. G and H.)

On May 16, 2008, plaintiffs filed the instant action against defendant. They allege:

> 18.  On December 20, 2007, December 23, 2007, December 28, 2007, December 30, 2007, January 7, 2008, January 9, 2008, January 13, 2008, January 17, 2008, January 22, 2008, January 25, 2008, January 31, 2008, February 2, 2008, February 7, 2008, February 13, 2008, February 17, 2008, February 18, 2008, and February 21, 2008[,] Defendant failed to fully implement Best Management Practices to the maximum extent practicable at the . . . construction site in violation of Ala. Admin. Code R. 335-6-12-.05(2), 335-6-12-.21(1), 335-6-12-.21(4), and 335-6-12-.21(5) and the conditions of NPDES Permit No. ALR16B471.
>
> . . .
>
> 22.  On December 23, 2007, December 28, 2007, December 30, 2007, January 7, 2008, January 9, 2008, January 17, 2008, January 22, 2008, January 25, 2008, January 30, 2008, February 1, 2008, February 2, 2008, February 6, 2008, February 7, 2008, February 13, 2008, February 17, 2008, February 18, 2008, and February 21, 2008, Defendant failed to maintain Best Management Practices to the maximum extent practicable at the . . . construction site in violation of

Ala. Admin. Code R. 335-6-12-.05(2), 335-6-12-.21(4), 335-6-12-.21(5), and 335-6-12-.35(1) and the conditions of NPDES Permit No. ALR16B471.

. . .

26.  On December 28, 2007, December 30, 2007, January 9, 2008, January 10, 2008, January 1, 2008, February 1, 2008, February 13, 2008, February 17, 2008, and February 21, 2008, Defendant discharged pollutants from the . . . construction site not effectively treated to the maximum extent practicable by Best Management Practices implemented and maintained pursuant to Ala. Admin. Code Chap. 335-6-12 in violation of Ala. Admin. Code R. 335-6-12-.33(1) and the conditions of NPDES Permit No. ALR16B471.

. . .

30.  On February 21, 2008, Defendant used Best Management Practices at the . . . construction site that caused or contributed to a violation of the turbidity standard in Ala. Admin. Code R. 335-6-10-.09(5)(e)9. in violation of Ala. Admin. Code R. 335-6-12-.21(5)(d) and the conditions of NPDES Permit No. ALR16B471.

(Doc. 1 ¶¶ 18, 22, 26, 30.)

(Doc. 28 at 3-5.)

In their Complaint, plaintiffs demanded the following relief:

A.  That the Court render a judgment declaring that Defendant violated NPDES Permit No. ALR16B471 and the conditions thereof as alleged herein.

B.  That the Court grant an injunction enjoining Defendant from continuing to violate NPDES Permit No. ALR16B471 and the conditions thereof as alleged herein.

C.  That the Court assess a civil penalty of $32,000 against Defendant for each violation of NPDES Permit No. ALR16B471 and the conditions thereof as alleged herein and for each day any such violation continued.

D.  That the Court award costs of litigation (including reasonable attorney and expert witness fees) to Plaintiffs.

E.  That the Court award Plaintiffs such other relief to which they may be entitled.

(Doc. 1 at 9-10.)

On or about July 28, 2008, ADEM executed a Special Order by Consent, Consent Order 08-183-CMNPS, with defendant and Camden Lake, L.L.C., based on ADEM's inspections that showed defendant "had not properly implemented and maintained effective BMPs resulting in discharges of sediment in stormwater runoff to an [unnamed tributary] of Cottonodale Creek" in violation of the NPDES permit.  (Doc. 40, Ex. A at 1, 4.)  ADEM found:

A. SERIOUSNESS OF THE VIOLATION: The Department contends that the Operator's discharges between October 3, 2007, and November 27, 2007, were not authorized by NPDES registration coverage, and also that sediment was allowed to be discharged from the Facility by the Operator.  The Department further contends that the Operator did not ensure that effective BMPs ["best management practices"] were fully implemented and maintained resulting in the discharge of pollutants, including sediment[,] that could otherwise have been prevented and/or minimized.  The Operator contends that [it] acted in good faith and made its best efforts to work with the Operator's QCPs ["ADEM-recognized qualified credentialed professional"] and the Department to design, implement, maintain and enhance BMPs in accordance with the Department's regulations and the Code of Alabama, to the maximum extent practicable.  The Operator further contends that the aforementioned UT ["unnamed tributary"] to Cottondale Creek also receives stormwater discharges from other upstream facilities which flow through the Facility.  There is no evidence that the noted violations caused any irreparable harm to the environment.  There is also no evidence that the noted violations were a threat to the health or safety of the public.

B.  THE STANDARD OF CARE:  . . . As a result of the Department's inspections on December 18, 2007 and February 22 2008, the Department contends that the Operator did not implement and fully maintain effective BMPs at the Facility.  In addition, the Department contends that the Operator did not exhibit a standard of care commensurate with applicable regulatory requirements.  The Operator contends that [it] met and exceeded the standard of care by taking all possible actions to implement the CBMPP ["construction best management practices plan"].  The Operator further contends that [it] met and exceeded the standard of care by taking all possible actions to implement, regularly maintain and, if necessary, enhance effective BMPs, to the maximum extent practicable, to mitigate any sedimentation, including but not limited to the following:  (1) hiring and retaining environmental engineering firms, as well as QCPs to assist the Operator in developing, implementing, inspecting, maintaining and enhancing the Operator's CBMPPs and BMPs at the Facility; (2) designing, installing, maintaining and enhancing sediment and retention basins, check dams, diversions, inlet protection, and swales at the Facility; (3) temporary and permanent seeding, reseeding, sodding, mulching and installation [of] other vegetation on multiple occasions at the Facility; (4) matting and rematting the Facility; (5) contouring and re-contouring at the Facility; and (6) installing, maintaining, repairing and enhancing silt-fencing, hay-bales, hay-logs, sediment barriers, floc-logs and rip-rap at the Facility.

. . .

D.  EFFORTS TO MINIMIZE OR MITIGATE THE EFFECTS OF THE VIOLATIONS UPON THE ENVIRONMENT:  The Department contends that the Operator took little or no action to minimize or mitigate the effects of the alleged violations upon the environment until required to do so by the Department.  The Operator contends that [it] took steps to minimize or mitigate the effects of the alleged violations upon the environment, including, but not limited to:  (1) hiring and retaining environmental engineering firms, as well as QCPs to assist the Operator in developing, implementing, inspecting, maintaining and enhancing the Operator's CBMPPs and BMPs at the Facility; (2) designing, installing, maintaining and enhancing sediment and retention basins, check dams, diversions, inlet protection, and swales at the Facility; (3) temporary and permanent seeding, reseeding, sodding, mulching and installation [of] other vegetation on multiple occasions at the Facility; (4) matting and rematting the Facility; (5) contouring and re-contouring at the Facility; and (6) installing, maintaining, repairing and enhancing silt-fencing, hay-bales, hay-logs, sediment barriers, floc-logs and rip-rap at the Facility.

7

. . .

G.  OTHER FACTORS:  . . .  The Operator contends that [it] has not committed any misconduct, wrongdoing, or any other actionable conduct, and that [it] has made a good-faith effort to respond to and comply with the recommendations and regulations of the Department and the Code of Alabama.

It should be noted that this Special Order by Consent is a negotiated settlement and, therefore, the Department has compromised the amount of the penalty the Department believes is warranted in this matter in the spirit of cooperation and the desire to resolve this matter amicably, without incurring the unwarranted expense of litigation.

(Doc. 40, Ex. A at 4-7.)

The Special Order by Consent contains the following terms and conditions:

A.  The Operator agrees to pay the Department a civil penalty in the amount of $15,000 in settlement of the violations alleged herein within forty-five days from the effective date of this Consent Order.[3]  . . .

. . .

C.  The Operator agrees, ***immediately upon the effective date of this Consent Order and continuing thereafter***, to ensure immediate and future compliance with the AWPCA, applicable ADEM regulations, and all NPDES registration limitations, terms, and conditions for all ADEM NPDES regulated sites/facilities disturbed, operated, owned, and/or controlled by the Operator or responsible officials of the Operator, except as may be provided otherwise by an ADEM approved compliance schedule contained in this Consent Order or any other Order executed or issued by the Department.

D.  The Operator agrees, ***immediately upon the effective date of this Consent Order and continuing thereafter***, to fully implement and maintain temporary BMPs to prevent/minimize to the maximum extent practicable noncompliant and/or unpermitted discharges of pollutants to waters of the State.

---

[3]Defendant has paid the civil penalty.  (Doc. 33 at 3.)

E.  The Operator agrees, unless relieved of this requirement in writing by the Department, that:

1.  all inspections/evaluations shall be performed by a QCP;
2.  BMP implementation and maintenance, and other corrective/remediation activities, shall be performed under the direct supervision of a QCP and shall be certified by a QCP;
3.  all applications, plans, and information shall be certified by a QCP;
4.  all submittals to the Department shall comply with applicable ADEM regulations and shall be signed by the Operator and certified by a QCP; and
5.  all applications, plans, reports, and other submittals to the Department shall indicate who prepared the submittal, who conducted and/or supervised the inspection /work including his or her QCP designation, how the inspection/work was conducted, and the results of the inspection/work.

The Operator agrees, within seven days of the receipt of any written comments from the Department, to modify any application, plan, information, report, or other submittal, or submit additional information/clarification to the Department to address any comments made by the Department in writing.

. . .

H.  The Operator agrees, *within ten days after the effective date of this Consent Order*, to submit to the Department a detailed plan for the remediation and/or removal, to the maximum extent practicable, of any sediment and other pollutants from the Facility deposited offsite and in State waters.

I.  The Operator agrees, *within twenty days after the effective date of this Consent Order*, to fully implement and maintain effective BMPs, implement all plans required by this Consent Order, and correct all alleged deficiencies at the Facility, offsite conveyances, and affected State waters, including sediment removal/remediation in a manner acceptable to the Department.

J.  The Operator agrees, *within twenty-five days after the effective date of this Consent Order*, to submit to the Department a certification that

9

effective BMPs have been implemented, all alleged deficiencies have been corrected, and full compliance with the requirements of ADEM Admin. Code chap. 335-6-12 has been achieved at the Facility, offsite conveyances, and affected State waters, including sediment removal/remediation in a manner acceptable to the Department.

K.  The Department and the Operator [hereinafter "Parties"] agree that this Consent Order shall apply to and be binding upon both parties, their directors, officers, and all persons or entities acting under or for them. . . .

L.  The Parties agree that, subject to the terms of these presents and subject to provisions otherwise provided by statute, this Consent Order is intended to operate as a full resolution of the alleged violations which are cited in this Consent Order.

M.  The Operator agrees that [it] is not relieved from any liability if [it] fails to comply with any provision of this Consent Order.

N.  For purposes of this Consent Order only, the Operator agrees that the Department may properly bring an action to compel compliance with the terms and conditions contained herein in the Circuit Court of Montgomery County.  The Operator also agrees that in any action brought by the Department to compel compliance with the terms of this Agreement, the Operator shall be limited to the defenses of *Force Majeure*, compliance with this Agreement and physical impossibility. . . .  Any request for a modification of a deadline must be accompanied by the reasons (including documentation) for each extension and the proposed extension time.  This information shall be submitted to the Department a minimum of ten working days prior to the original anticipated completion date.  If the Department, after review of the extension request, finds the work was delayed because of conditions beyond the control and without the fault of the Operator, the Department may extend the time as justified by the circumstances.  The Department may also grant any other additional time extension as justified by the circumstances, but the Department is not obligated to do so.

(*Id*. at 7-10 [footnote added].)

On August 12, 2008, ADEM inspected the facility.  (Doc. 32, Ex. C at 1.)  It observed that defendant had failed to implement BMPs to the extent practicable.  (*Id*.)  It gave

10

defendant an "unsatisfactory" mark in a number of areas, including "BMPs Maintained,"

"Slope Stabilization," Instream Turbidity," BMPs Effective," "Annual Vegetation," "On-Site

Sedimentation," Perennial Vegetation," "On-Site Erosion," "Temporary Seed & Mulch,"

"Discharge Water Quality," "BMPs Implemented," "Inlet Protection," and Instream Water

Quality." (*Id*.)  This inspection was 15 days after ADEM signed the Special Order of

Consent.

Defendant filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction, or in the

alternative, Motion to Stay.  (Doc. 6.)  On July 20, 2009, this court denied the Motion to

Dismiss.  (Doc. 29.)  However, the court granted the Motion to Stay, (*id*.), and noted, "At

oral argument, plaintiffs conceded that this case would be moot if defendant complies with

the Consent Order and completes its agreed-to remediation of the affected waters," (doc. 28

at 17.)

On August 27, 2009, ADEM reinspected the property and made the same findings as

it made after its inspection in August 2008.  (Doc. 32, Ex. F at 2.)  This inspection reported:

- Stormwater inlets were not adequately protected. . . . Bare areas lacked temporary seed & mulch where construction had not taken place for 13 days or longer.  Some lots under construction had no BMPs on street side of lot

- On-site sedimentation, totaling about 30 feet long by 15 feet wide by 1/8 inch deep, observed on subdivision streets.

- On-site erosion gullies, up to 20 feet long by 8 inches wide by 8 inches deep, observed on slopes.

- • Vehicle tracking observed on subdivision streets. Construction entrances to lots were not graveled.

- • Construction and worker debris was not adequately contained or managed.

(*Id.*)

Plaintiff Wathen has testified that defendant was not in compliance with the Special Order by Consent from July 28, 2008 through September 28, 2009. (Doc. 32 ¶ 4 and Exhibits C through L.) Plaintiff's expert, Michael William Mullen, testified that he inspected the property on July 30, 2009 and again on November 4, 2009 and found that the property was "not significantly improved." (Doc. 36 ¶¶ 3-5.) He also testified that he had inspected the property on February 21, 2010 and found the conditions "were not significantly improved from the condition [he] found there during [his] last inspection on November 4, 2010." (Doc. 44 ¶¶ 3, 5.) He testified that defendant had "failed to implement and maintain appropriate erosion and sediment control Best Management Practices to prevent the discharge of pollutants to surface waters to the maximum extent practicable." (*Id.* ¶ 4; *see also* doc. 36 ¶ 4.)

Defendant did not began the submission process for its remediation plan until July 1, 2009 – over one year after the Special Order by Consent was executed by ADEM. (Doc. 33 at 3; doc. 40, Ex. A at 12.) ADEM approved the plan on or about September 24, 2009. (Doc. 33 at 3.)

12

Defendant contends that ADEM's last two inspections found that it had "properly implemented and maintained the required BMPs.[4]  Therefore, it alleges, "The ADEM enforcement action including the Consent Order has addressed and remedied the claims alleged by [t]he Plaintiffs in their Complaint, and preempted said suit."  (Doc. 40 at 4.)

_____

[4]In its Brief in Support of its motion to dismiss, defendant contends, "as of the last two inspections conducted by ADEM, [defendant] has properly implemented and maintained the required BMPs.  (Doc. 40 at 4 [citing doc. 33, Ex. B; doc. 40, Exs. B and C].)  The documents do not support defendant's assertion. Exhibit B to document 33 is a letter from ADEM accepting defendant's soil remediation plan on September 24, 2009.  (Doc. 33, Ex. B.)  Exhibit B to document 40 lists a number of problems on site, including:

3    Silt fence not maintained in some spots.  Sloped areas on far side of UT Cottondale Creek was not grassed or stabilized.  Dirt piles were not stabilized.  Vegetation was patchy in some areas.

     . . .

6    On-site sedimentation, totaling about 5 feet long by 1 foot wide by 1/8 inch deep, observed in streets.

7    On-site erosion rills observed under vegetation on some slopes.  Partial slope failure observed on slope near UT to Cottondale Creek.

8    Sediment remediation plan required by consent order had been completed in UT Conttondale Creek downstream of site, at Bradford Boulevard bridge.  Area of sediment removal had been stabilized with geotextile and rip-rap.

     . . .

11   Construction and worker debris not adequately contained or managed.

(Doc. 40, Ex. B at 5.)  Only the inspection report of the January 28, 2010 inspection shows a lack of problems.  (Doc. 40, Ex. C.)

On February 5, 2010, after defendant had filed its Amended Motion to Dismiss, ADEM sent defendant a letter regarding the "closure/resolution of consent order 08-183-CMNPS," which stated, "[T]his is to advise the Operator that the Department considers the specific actionable items required by the above-referenced Order to be adequately addressed/resolved."  (Doc. 46, Ex. A.)

## III. <u>DISCUSSION</u>

### A.  MOTION TO STAY

Defendant filed a Motion to Extend Stay of Proceedings to allow it to complete its remediation plan.  (Doc. 30 ¶¶ 3-4.)  As set forth above, ADEM "considers the specific actionable items required by the above-referenced Order to be adequately addressed/resolved."  (Doc. 46, Ex. A.)  Therefore, the court will deny defendant's Motion to Extend Stay as moot.

### B.  MOTION TO DISMISS

Defendant contends that this case "should be dismissed as this Honorable Court lacks subject matter jurisdiction over [t]he Plaintiffs' claims in that the claims alleged by [t]he Plaintiffs have been addressed and remedied by the Consent Order executed on July 28, 2008, between [ADEM] and [defendant], and thus this case is now moot."  (Doc. 40 at 2.) In support of its Motion to dismiss, defendant cites the court to *Black Warrior Riverkeeper, Inc. v. Cherokee Mining*, 637 F. Supp. 2d 983 (N.D. Ala. 2009)(Acker, J.), and *Friends of Hurricane Creek v. SDW, Inc.*, Case Number 7:08-CV-1587-LSC, doc. 17 (N.D. Ala. Jan.

14

16, 2009).   Plaintiffs contend that their claims are not precluded by 33 U.S.C. § 1319(g)(6)(A), as were the plaintiff's claims in *SDW*,[5] because they filed their notice before ADEM commenced its action against defendant, (doc. 43 at 2-3),  and that their claims are not moot as a matter of fact because defendant has continued to violate the Clean Water Act, (*id*. at 7).

Unlike the plaintiffs in *SDW*, this court has previously held, "pursuant to § 1319(g)(6)(B)(ii), the limitations on citizen's suits found in § 1319(g)(6)(A) does not bar plaintiffs' Complaint."  *Compare*, *SDW, Inc.*, Case Number 7:08-CV-1587-LSC, doc. 17 at 3-6, 16 *with id*., doc. 28 at 15.  Therefore, unlike the plaintiffs in *SDW*, citizen suit is not barred by 33 U.S.C. § 1319(g)(6)(A).

Defendant argues that this court lacks subject-matter jurisdiction because plaintiff's claims are moot based on the Special Order by Consent.  The Eleventh Circuit has held:

> We have explained the relationship between mootness and the court's subject matter jurisdiction this way:
>
>> Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of "Cases" and "Controversies." . . . *[A] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief*.  If events that occur subsequent to the filing of a lawsuit . . . deprive the court of the ability to give the plaintiff . . . meaningful relief, then the case is moot and must be dismissed.
>
> *Troiano* [*v. Supervisor of Elections in Palm Beach County*], 382 F.3d [1276,] 1281-82 [11th Cir. 2004)](citation omitted).  However, "[t]he doctrine of *voluntary* cessation

---

[5] *See SDW, Inc.*, Case Number 7:08-CV-1587-LSC, doc. 17 at 3-4, 6, 16-17.

provides an important exception to the general rule that a case is mooted by the end of the offending behavior," *id.* at 1282 (emphasis added):

> It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.  If it did, the courts would be compelled to leave the defendant free to return to his old ways.  In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is *stringent:*  A case *might* become moot if subsequent events made it *absolutely clear* that the allegedly wrongful behavior *could not reasonably be expected to recur.*

> *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 189, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) (internal quotation marks, citations, and alterations omitted; emphasis added); *see also United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S. CT. 894, 97 L. ED. 2D. 1303 (1953) ("[T]o say that the case has become moot means that the defendant is entitled to a dismissal as a matter of right.  The courts have rightly refused to grant defendants such a powerful weapon against public law enforcement.").

*Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1183-84 (11th Cir. 2007)(bold emphasis added, italics in original).

In a case with similar facts, *Black Warrior Riverkeeper, Inc. v. Cherokee Mining*, 637 F. Supp. 2d 983 (N.D. Ala. 2009)(Acker, J.), this court held that the cessation of the unlawful conduct was not voluntary; rather, it held that the cessation was "in direct response to an order entered by the state agency officially charged with responsibility for dealing with water violations."  *Id*. at 987.  The *Black Warrior Riverkeeper* court held:

> The ADEM order came as a direct result of ADEM action.  This court is unwilling to conclude that, despite ADEM's future oversight and [defendant's] vulnerability to enforcement action, [defendant] will violate the ADEM order so as to call for the overlapping [Clean Water Act] enforcement mechanism of an injunction.

*Id.* at 989 (citing *Environmental Conservation Organization v. City of Dallas*, 529 F.3d 519 (5th Cir. 2008)).  As a result, the court found that plaintiff "was obligated to demonstrate that there is a ***serious prospect*** that the [defendant's] violations described in [plaintiff's] complaint will continue to occur notwithstanding the consent decree." *Id*.  The court found "no clear basis to infer that [defendant] will continue to engage in the conduct complained of." *Id*. at 990.

This court need not decide whether defendant's cessation of the unlawful conduct was voluntary or involuntary because, unlike the plaintiffs in *Black Warrior Riverkeepers*, plaintiffs herein have presented enough evidence to allow an inference that defendant will continue to engage in the conduct of which plaintiffs complain.  In the Special Order by Consent, defendant did not admit liability; therefore defendant has not been declared liable based on unlawful conduct.  Also, the Order set forth a number of deadlines; none of which were met by defendant.  Defendant continued to discharge sediment into the unnamed tributary of Cottondale Creek and it failed to implement BMPs for months after entering into the Special Order by Consent.  Yet, after its first, and only, inspection during which no violations are noted, it promptly moved to dismiss this case as moot, even before ADEM closed its case.  Finally, plaintiffs' expert has testified that defendant continues to violate the CWA and AWPCA.  Based on evidence of continuing violations, together with evidence of only one clean inspection, the court finds a serious prospect that defendant will continue to violate the Clean Water Act as long as it is constructing the Camden Lakes subdivision.

However, the court must determine what, if any, remedy can it award plaintiffs, assuming they are successful at trial.

Because the court finds a serious prospect that defendant will continue to violate the CWA, despite the Special Order of Consent, the court finds that plaintiffs' request for declaratory and injunctive relief are not moot.  However, their request for a civil penalty is mooted by ADEM's assessment of the civil penalty and defendant's payment of that penalty.

In *Black Warrior Riverkeeper*, the court held:

> [Plaintiff], alternatively, argues that even if its claim for injunctive relief is moot, its claim for civil penalties should proceed.  The court fully understands that, in cases of voluntary compliance, allowing civil penalty claims to go forward can serve (1) to ensure the effectiveness of a citizen suit as a deterrent, and (2) to discourage polluters from delaying compliance when no penalty will result if the violations cease before court disposition.  *See* [*Atlantic States Legal Found., Inc. v.*] *Tyson Foods*, 897 F.2d [1128,] 1137 [(11th Cir. 1990)].  This rationale does not fit cases like this one in which the appropriate state agency has already assessed a monetary penalty against the polluter.  The consent order required [defendant] to pay a penalty of $15,000.  Although $15,000 is not the maximum penalty permitted by the statute, *see* Ala. Code § 22-22A-5(18)c, if [plaintiff] were allowed to proceed in this suit and were successful on the merits, this court would not be obligated to impose the maximum penalty.  From a position of considerable strength, ADEM arrived at what it believed to be an appropriate penalty, after giving consideration to the list of relevant factors provided by the laws of Alabama and the United States.  To allow [plaintiff] to make a separate claim for civil penalties would call upon this court to second-guess ADEM's evaluation of the proper penalty.  *See Envtl. Conservation Org.* [*v. City of Dallas*], 529 F.3d [519,] 531 [(5th Cir. 2008)]("That [plaintiff] might have sought stiffer penalties against the City does not change the result; [plaintiff] is not permitted to upset the primary enforcement role of the [agency] by seeking civil penalties that '[the agency] chose to forego.'")(quoting *Gwaltney* [*of Smithfield v. Chesapeake Bay Found., Inc.*], 484 U.S. [49], 61, 108 S. Ct. 376).  For these reasons, [plaintiff]'s claim for civil penalties will also be dismissed as moot.

18

*Black Warrior Riverkeeper*, 637 F. Supp. 2d at 990 (Acker, J.).  This court agrees with this reasoning.  Because ADEM has assessed what it considers an appropriate civil penalty, which defendant has paid, the court finds that plaintiffs' claim for an additional penalty is due to be dismissed as moot.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that defendant's Motion to Extend Stay, (doc. 30), is due to be denied as moot, and its second Motion to Dismiss, (doc. 40), is due to be granted in part and denied in part.   An Order denying as moot defendant's Motion to Extend Stay, (doc. 30), and granting in part and denying in part its Amended Motion to Dismiss, (doc. 40), will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 29th day of September, 2010.

SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE